JS 44  (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.    *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| LINDSAY LAKE | STRYKER SALES CORPORATION |

**(b)**  County of Residence of First Listed Plaintiff   Delaware
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   KALAMAZOO
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)**  Attorneys *(Firm Name, Address, and Telephone Number)*
Kevin Console, Esquire
Console Mattiacci Law LLC, 1525 Locust Street, 9th Floor
Philadelphia, PA 19102 215-545-7676

Attorneys *(If Known)*

## II.  BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [x] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 2  U.S. Government Defendant
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III.  CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV.  NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance<br>[ ] 120 Marine<br>[ ] 130 Miller Act<br>[ ] 140 Negotiable Instrument<br>[ ] 150 Recovery of Overpayment & Enforcement of Judgment<br>[ ] 151 Medicare Act<br>[ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>[ ] 153 Recovery of Overpayment of Veteran's Benefits<br>[ ] 160 Stockholders' Suits<br>[ ] 190 Other Contract<br>[ ] 195 Contract Product Liability<br>[ ] 196 Franchise | **PERSONAL INJURY**<br>[ ] 310 Airplane<br>[ ] 315 Airplane Product Liability<br>[ ] 320 Assault, Libel & Slander<br>[ ] 330 Federal Employers' Liability<br>[ ] 340 Marine<br>[ ] 345 Marine Product Liability<br>[ ] 350 Motor Vehicle<br>[ ] 355 Motor Vehicle Product Liability<br>[ ] 360 Other Personal Injury<br>[ ] 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>[ ] 365 Personal Injury - Product Liability<br>[ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>[ ] 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>[ ] 370 Other Fraud<br>[ ] 371 Truth in Lending<br>[ ] 380 Other Personal Property Damage<br>[ ] 385 Property Damage Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881<br>[ ] 690 Other<br><br>**LABOR**<br>[ ] 710 Fair Labor Standards Act<br>[ ] 720 Labor/Management Relations<br>[ ] 740 Railway Labor Act<br>[ ] 751 Family and Medical Leave Act<br>[ ] 790 Other Labor Litigation<br>[ ] 791 Employee Retirement Income Security Act | [ ] 422 Appeal 28 USC 158<br>[ ] 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>[ ] 820 Copyrights<br>[ ] 830 Patent<br>[ ] 835 Patent - Abbreviated New Drug Application<br>[ ] 840 Trademark<br>[ ] 880 Defend Trade Secrets Act of 2016<br>**SOCIAL SECURITY**<br>[ ] 861 HIA (1395ff)<br>[ ] 862 Black Lung (923)<br>[ ] 863 DIWC/DIWW (405(g))<br>[ ] 864 SSID Title XVI<br>[ ] 865 RSI (405(g)) | [ ] 375 False Claims Act<br>[ ] 376 Qui Tam (31 USC 3729(a))<br>[ ] 400 State Reapportionment<br>[ ] 410 Antitrust<br>[ ] 430 Banks and Banking<br>[ ] 450 Commerce<br>[ ] 460 Deportation<br>[ ] 470 Racketeer Influenced and Corrupt Organizations<br>[ ] 480 Consumer Credit (15 USC 1681 or 1692)<br>[ ] 485 Telephone Consumer Protection Act<br>[ ] 490 Cable/Sat TV<br>[ ] 850 Securities/Commodities/ Exchange<br>[ ] 890 Other Statutory Actions<br>[ ] 891 Agricultural Acts<br>[ ] 893 Environmental Matters<br>[ ] 895 Freedom of Information Act<br>[ ] 896 Arbitration<br>[ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>[ ] 950 Constitutionality of State Statutes |
| **REAL PROPERTY**<br>[ ] 210 Land Condemnation<br>[ ] 220 Foreclosure<br>[ ] 230 Rent Lease & Ejectment<br>[ ] 240 Torts to Land<br>[ ] 245 Tort Product Liability<br>[ ] 290 All Other Real Property | **CIVIL RIGHTS**<br>[ ] 440 Other Civil Rights<br>[ ] 441 Voting<br>[x] 442 Employment<br>[ ] 443 Housing/ Accommodations<br>[ ] 445 Amer. w/Disabilities - Employment<br>[ ] 446 Amer. w/Disabilities - Other<br>[ ] 448 Education | **PRISONER PETITIONS**<br>**Habeas Corpus:**<br>[ ] 463 Alien Detainee<br>[ ] 510 Motions to Vacate Sentence<br>[ ] 530 General<br>[ ] 535 Death Penalty<br>**Other:**<br>[ ] 540 Mandamus & Other<br>[ ] 550 Civil Rights<br>[ ] 555 Prison Condition<br>[ ] 560 Civil Detainee - Conditions of Confinement | **IMMIGRATION**<br>[ ] 462 Naturalization Application<br>[ ] 465 Other Immigration Actions | **FEDERAL TAX SUITS**<br>[ ] 870 Taxes (U.S. Plaintiff or Defendant)<br>[ ] 871 IRS—Third Party 26 USC 7609 | |

## V.  ORIGIN *(Place an "X" in One Box Only)*

- [x] 1  Original Proceeding
- [ ] 2  Removed from State Court
- [ ] 3  Remanded from Appellate Court
- [ ] 4  Reinstated or Reopened
- [ ] 5  Transferred from Another District
- [ ] 6  Multidistrict Litigation - Transfer
- [ ] 8  Multidistrict Litigation - Direct File

## VI.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. §2000e, et seq. ("Title VII"); 43 P.S. §951, et seq. ("PHRA")

Brief description of cause:
Plaintiff brings this action against her former employer for discrimination based on her sex and pregnancy and retaliation based on the same.

## VII.  REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
excess of $75,000

CHECK YES only if demanded in complaint:
JURY DEMAND:  [x] Yes  [ ] No

## VIII.  RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
November 6, 2020

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #  _____   AMOUNT  _____   APPLYING IFP  _____   JUDGE  _____   MAG. JUDGE  _____

UNITED STATES DISTRICT COURT
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ Media, PA _____

Address of Defendant: _____ 3800 East Centre Avenue, Portage, MI 49002 _____

Place of Accident, Incident or Transaction: _____

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

| | | | |
|---|---|---|---|
| 1. | Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court? | Yes ☐ | No ☑ |
| 2. | Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court? | Yes ☐ | No ☑ |
| 3. | Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court? | Yes ☐ | No ☑ |
| 4. | Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual? | Yes ☐ | No ☑ |

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 11/6/2020 _____ _____ 317235
 *Attorney-at-Law / Pro Se Plaintiff* *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.** **Federal Question Cases:**

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☑ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☐ 11. All other Federal Question Cases
  *(Please specify):* _____

**B.** **Diversity Jurisdiction Cases:**

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* _____
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
  *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ Kevin Console, Esquire _____, counsel of record *or* pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: 11/6/2020 _____ _____ 317235
 *Attorney-at-Law / Pro Se Plaintiff* *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| LINDSAY LAKE | : | CIVIL ACTION |
| PLAINTIFF, | : | |
| v. | : | |
| STRYKER SALES CORPORATION | : | |
| DEFENDANT. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.                              ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.                                                                       ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court.  (See reverse side of this form for a detailed explanation of special
management cases.)                                                                          ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.          ( X)

| | | |
|---|---|---|
| November 6, 2020 | /s/ Kevin Console | Plaintiff, Lindsay Lake |
| **Date** | **Attorney-at-law** | **Attorney for** |
| **(215) 545-7676** | **(215) 701-2344** | kevinconsole@consolelaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**IN THE UNITED STATES DISTRICT COURT FOR**
**THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LINDSAY LAKE** | : | |
| Media, PA | : | |
| | : | **CIVIL ACTION NO.** |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **STRYKER SALES CORPORATION** | : | **JURY TRIAL DEMANDED** |
| **3800 East Centre Avenue** | : | |
| **Portage, MI 49002** | : | |
| | : | |
| Defendant. | : | |
| | : | |

## COMPLAINT

### I. INTRODUCTION

Plaintiff, Lindsay Lake ("Plaintiff"), brings this action against her former employer, Defendant Stryker Sales Corporation ("Defendant"). As alleged herein, Defendant discriminated against Plaintiff because of her sex and pregnancy, and retaliated against Plaintiff based on her complaints regarding the same. Specifically, between 2016 and 2018 and amidst the birth of Plaintiff's fourth and fifth children, Defendant subjected Plaintiff to a hostile work environment which included, without limitation, engaging in sexist comments and conduct; criticizing Plaintiff's status as a working mother and questioning her decision to return to the workforce; and issuing to Plaintiff unwarranted negative performance appraisals. After Plaintiff complained to Defendant of sex and pregnancy discrimination, Defendant subjected Plaintiff to a retaliatory hostile work environment, which culminated in Plaintiff being terminated for false and pretextual reasons.

Plaintiff now brings claims pursuant to Title VII of the Civil Rights Act of 1964, as

1

amended, 42 U.S.C. §2000e, *et seq.* ("Title VII"); the Pennsylvania Human Relations Act, as amended, 43 P.S. §951, *et seq.* ("PHRA"); and the Pennsylvania Fair Practices Ordinance, Bill No. 130684, Philadelphia Code §§9-1100, *et. seq.* ("PFPO"). Plaintiff seeks all damages, including economic loss, compensatory damages, punitive damages, attorneys' fees and costs, and all other relief this Court deems appropriate.

**II.    PARTIES**

1.     Plaintiff, Lindsay Lake, is an individual and citizen of Pennsylvania. She resides in Media, PA.

2.     Plaintiff is female.

3.     Defendant Stryker Sales Corporation is a Michigan corporation with a principal place of business located at 3800 East Centre Avenue, Portage, MI 49002.

4.     Defendant is engaged in an industry affecting interstate commerce and regularly conducts business in the Commonwealth of Pennsylvania, including, without limitation, within the City of Philadelphia.

5.     At all relevant times, Plaintiff primarily worked out of her home in Media, PA.

6.     At all relevant times, Defendant acted by and through its authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Defendant and in furtherance of Defendant's business.

7.     At all relevant times, Defendant employed fifteen (15) or more employees.

8.     At all relevant times, Defendant acted as an "employer" within the meaning of the statutes forming the basis of this matter.

9.     At all relevant times, Plaintiff was an "employee" of Defendant within the meaning of the statutes forming the basis of this matter.

### III.     JURISDICTION AND VENUE

10.     The causes of action forming the basis of this matter arise under Title VII, the PHRA, and the PFPO.

11.     The District Court has jurisdiction over Count I (Title VII) pursuant to 42 U.S.C. §2000e-5 and 28 U.S.C. §1331.

12.     The District Court has supplemental jurisdiction over Count II (PHRA) and Count III (PFPO) pursuant to 28 U.S.C. §1367.

13.     Venue is proper in the District Court under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred within this District.

14.     On or about May 20, 2019, Plaintiff filed a Complaint with the Pennsylvania Human Relations Commission ("PHRC") complaining of the acts of discrimination and retaliation alleged herein. This Charge was cross-filed with the Equal Employment Opportunity Commission ("EEOC"). Attached hereto, incorporated herein, and marked as "Exhibit 1" is a true and correct copy of that PHRC Complaint (with personal identifying information redacted).

15.     On or about August 12, 2020, the EEOC issued to Plaintiff a Notice of Right to Sue.  Attached hereto, incorporated herein, and marked as "Exhibit 2" is a true and correct copy of that Notice (with personal identifying information redacted).

16.     Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

### IV.     FACTUAL ALLEGATIONS

17.     Plaintiff was hired by Defendant's predecessor on or about March 17, 2014.

18.     Plaintiff held the position of Sales Representative.

19.     At all relevant times, Plaintiff worked out of her home office in Pennsylvania.

20.     Beginning in or about August 2014, Plaintiff reported to Nathan Lynch (male), Regional Director of Sales.

21.     Lynch reported to Eric Cunningham (male), Area Vice President.

22.     In or about September 2015, in a meeting with Lynch, Plaintiff notified Defendant that she was pregnant and expecting her fourth child.

23.     Plaintiff informed Defendant that her due date was February 20, 2016.

24.     In response, Lynch stated that Defendant expected Plaintiff to attend its National Sales Meeting in early February 2016.

25.     In or around December 2015, Plaintiff provided Merrie Hollister (female), Human Resources ("HR") Representative, with a doctor's note stating that she was unable to attend the National Sales Meeting due to her pregnancy.

26.     After notifying Defendant of her pregnancy, Plaintiff's male superiors and colleagues, including, without limitation, Lynch, frequently asked Plaintiff about her pregnancy. Examples of the same include, without limitation:

      a.   Asking Plaintiff whether she intended to return to work following her maternity leave; and

      b.   Asking Plaintiff whether she thought it was time for her to stay home and raise her family.

27.     Upon information and belief, Defendant did not ask Plaintiff's male and/or non-pregnant colleagues whether they intended to continue working at Defendant or whether it was time for them to stay home and raise their families.

28.     Plaintiff understood Defendant's comments to be discriminatory based on her sex and pregnancy, and as contributing to a hostile work environment.

29.     On February 26, 2016, Plaintiff gave birth to her fourth child.

30.     From February 26, 2016 through on or about April 24, 2016, Plaintiff was out of work on maternity leave.

31.     On or about April 25, 2016, Plaintiff returned to work from her maternity leave.

32.     Upon returning to work from her maternity leave, Plaintiff learned that certain of her sales territory and accounts were removed from her control.

33.     Defendant reassigned portions of Plaintiff's sales territory and accounts to David Marshall (male), Sales Representative, who Defendant had recently hired.

34.     Plaintiff was given no explanation as to why certain of her sales territory and accounts were removed from her control and assigned to Marshall.

35.     Defendant reassigned portions of Plaintiff's sales territory and accounts to Marshall because of Plaintiff's sex and/or pregnancy.

36.     Plaintiff's sales numbers were negatively impacted by her reduction of sales territory and accounts.

37.     Upon returning to work from her maternity leave, Lynch and Plaintiff's other male colleagues routinely made discriminatory comments to Plaintiff based on her sex, her recent pregnancy, and her status as a mother. Examples of the same include, without limitation:

      a.  Lynch asked Plaintiff what she had been doing for the past twelve (12) weeks and criticized Plaintiff for not doing enough while she was on maternity leave;

      b.  Lynch stated that Plaintiff had to show that she was "back in the saddle" now that she had returned from maternity leave;

      c.  Lynch asked Plaintiff if she was sure she wanted to return to work at Defendant;

      d.  Lynch stated that he and Cunningham were "shocked" that Plaintiff had

returned from maternity leave, as they "never believed" Plaintiff would return to work;

e.   Lynch stated that he would not believe that Plaintiff would leave her newborn at home and that his own wife would never do that;

f.   Lynch asked Plaintiff in a mocking tone how many times she needed to call home to check on her baby;

g.   Lynch and Defendant's other male employees discussed, in front of Plaintiff, that having a C-section was better than a natural birth because then the woman's vagina was not "stretched out";

h.   Lynch frequently criticized Plaintiff's decision to return to work and questioned Plaintiff's ability to both work at Defendant and be a mother;

i.   Lynch frequently asked Plaintiff how she could possibly work full-time with four (4) children; and

j.   Lynch and Defendant's other male employees frequently discussed going to strip clubs in front of Plaintiff.

38.   Upon information and belief, Defendant did not subject its male and/or not recently pregnant employees to similar comments.

39.   Upon her return to work, Lynch denied Plaintiff breaks to pump breast milk.

40.   Defendant's refusal to permit Plaintiff breaks to pump breast milk caused Plaintiff to endure severe physical discomfort and mastitis, a breast infection.

41.   Lynch stated on numerous occasions that he was proud that he had never hired a female employee.

42.   Thereafter, in or around March 2017, Lynch called Plaintiff and stated that he "did

it"; he "popped [his] cherry" and "hired a female."

43.     Plaintiff understood Defendant's comments and conduct to be discriminatory based on her sex, recent pregnancy, and status as a mother, and as contributing to a hostile work environment.

44.     On or about July 14, 2017, in a meeting with Lynch, Plaintiff notified Defendant that she was pregnant and expecting her fifth child. Plaintiff stated that her due date was February 6, 2018.

45.     Four (4) days after informing Defendant of her pregnancy, on or about July 18, 2017, Plaintiff was issued a "Coaching Worksheet" notifying Plaintiff of her "below standard performance" and warning Plaintiff that "[f]ailure to meet the goals and objectives of the above plan and follow-up reviews may result in further disciplinary action; up to and including termination."

46.     Plaintiff's performance did not warrant a Coaching Worksheet. For example, and without limitation, Plaintiff had recently made two (2) significant sales and her sales numbers were on track to obtain Defendant's sales goals.

47.     The Coaching Worksheet contained false statements and misrepresentations and outlined goals that were unattainable in the timeframe provided.

48.     Prior to informing Defendant of her pregnancy, Plaintiff was not given any indication that her performance was deficient or warranted a Coaching Worksheet.

49.     Defendant issued to Plaintiff a Coaching Worksheet because of her sex and pregnancy.

50.     On July 25, 2017, in an email to Nikki Schnittker (female), Director of HR Integration, Plaintiff rebutted many of the false statements and misrepresentations contained in the

Coaching Worksheet she was issued.

51.     On July 29, 2017, in an email to Schnittker, Plaintiff complained of sex and pregnancy discrimination at Defendant.

52.     Plaintiff stated, in relevant part: "[o]ver the past three years, since Nathan Lynch became my manager, he frequently suggested that because of my status as a female caregiver and a pregnant woman that I should not work and be home raising my family."

53.     Plaintiff provided further examples of Lynch's sex- and pregnancy-discriminatory comments and conduct.

54.     In response, Plaintiff was informed that Defendant would look into her complaints of sex and pregnancy discrimination.

55.     In or around mid-August 2017, in a phone call with Schnittker, Plaintiff was informed that Defendant found no wrongdoing.

56.     Defendant failed to take appropriate corrective or preventative measures in connection with Plaintiff's complaints of discrimination.

57.     Despite her complaints regarding Lynch's discriminatory comments and conduct, Plaintiff was required to continue reporting to Lynch until his resignation in or around November 2017. Thereafter, in or around December 2017, Plaintiff began reporting directly to Cunningham.

58.     Following her complaints of discrimination, Defendant continued to treat Plaintiff differently—and worse—than its male and/or non-pregnant (or recently pregnant) and/or non-complaining employees.

59.     Defendant's male employees routinely made comments of a sexual and sexist nature. Examples of the same include, without limitation:

        a.   Stating that they could not believe that Plaintiff was a mother;

b.   Asking Plaintiff if she breastfed;

c.   Stating that they wished their wives looked like Plaintiff;

d.   Stating that they wished that their wives worked outside of the home like Plaintiff;

e.   Discussing in Plaintiff's presence who they thought Defendant's "hottest" female employee was; and

f.   Instructing Plaintiff not to stay out late with "the guys" after work events because this was male bonding time.

60.   Plaintiff understood Defendant's comments to be discriminatory based on her sex and as contributing to a hostile work environment.

61.   From February 14, 2018 through May 10, 2018, Plaintiff was out of work on maternity leave.

62.   Plaintiff returned to work from maternity leave on May 10, 2018.

63.   Upon her return from maternity leave, Plaintiff reported to Casey Davidson (male), Regional Manager.

64.   Davidson reported to Cunningham.

65.   On or about May 15, 2018, Plaintiff was called to a meeting with Davidson and Cunningham. During this conversation, Cunningham stated that he knew Plaintiff had a "horrible relationship" with Lynch and hoped that Plaintiff could "work better" with Davidson. During this meeting, Plaintiff was advised that she had six (6) months to meet her sales numbers.

66.   In or around late-May 2018, Plaintiff contacted Shanna Shattuck (female), HR Representative, to inquire about Defendant's protocol regarding Plaintiff's use of a breast pump during an upcoming field ride-along with her male supervisor.

9

67.     Shattuck advised Plaintiff that she should be given breaks every few hours, as needed, but that she should discuss it directly with her male supervisor.

68.     In or around June 2018, during a field ride-along with Davidson, Plaintiff was not given any breaks to use her breast pump.

69.     By the end of the day, Plaintiff's shirt was soaked in breast milk and she was in severe physical pain.

70.     In or around September 2018, Plaintiff's sales territory was split.

71.     Plaintiff was given no input into which half of her sales territory she could retain.

72.     Upon information and belief, Defendant's male and/or non-complaining employees were permitted to choose which territory they would retain when their sales territories were split.

73.     On December 24, 2018, Plaintiff submitted her performance review self-assessment. Plaintiff gave herself an overall positive performance evaluation.

74.     On January 29, 2019, in a meeting with Davidson, Defendant issued to Plaintiff an overall negative performance evaluation which included an unsatisfactory overall rating.

75.     Plaintiff's performance did not warrant an unsatisfactory overall rating. For example, and without limitation, Plaintiff ranked approximately thirty-five (35) among Defendant's one hundred (100) Sales Representatives (with number one (1) being the highest ranked). In other words, more than half of Defendant's Sales Representatives were lower ranked than Plaintiff.

76.     Upon information and belief, Defendant's male and/or not-recently-pregnant and/or non-complaining employees who did not reach their sales numbers were not given unsatisfactory overall ratings.

77.     Defendant issued to Plaintiff an unsatisfactory overall rating because of her sex,

pregnancy, and/or because of her complaints of discrimination regarding the same.

78.    Between February 4 and February 7, 2019, Plaintiff attended Defendant's National Sales Meeting.

79.    At the National Sales Meeting, Defendant treated Plaintiff differently—and worse—than it treated her male and/or not-recently-pregnant and/or non-complaining employees. Examples of the same include, without limitation:

    a.  Plaintiff was not asked to present at the meeting;

    b.  Davidson asked Plaintiff to change seats to be seated further away from him; and

    c.  Plaintiff was excluded and ignored by her colleagues, including, without limitation, Davidson and Cunningham.

80.    On March 28, 2019, in a meeting with Cunningham, Davidson, and Julie Anderson (female), HR Director, Defendant terminated Plaintiff's employment, effective March 29, 2019.

81.    Defendant's stated reason for terminating Plaintiff was that she was not meeting expectations.

82.    Defendant's stated reason for terminating Plaintiff is false and pretextual.

83.    Plaintiff's sex was a motivating and/or determinative factor in connection with Defendant's discriminatory treatment of Plaintiff, including, without limitation, subjecting Plaintiff to a hostile work environment and terminating Plaintiff's employment.

84.    Plaintiff's pregnancy was a motivating and/or determinative factor in connection with Defendant's discriminatory treatment of Plaintiff, including, without limitation, subjecting Plaintiff to a hostile work environment and terminating Plaintiff's employment.

85.    Plaintiff's complaints of sex and/or pregnancy discrimination were motivating

and/or determinative factors in connection with Defendant's discriminatory treatment of Plaintiff, including, without limitation, subjecting Plaintiff to a hostile work environment and terminating Plaintiff's employment.

86.     Defendant's sex and/or pregnancy discriminatory and retaliatory conduct, as alleged herein, was severe or pervasive enough to make a reasonable person believe that the conditions of employment had been altered and that a hostile work environment existed, and made Plaintiff believe that the conditions of employment had been altered and that a hostile work environment existed.

87.     Defendant has not provided a legitimate, non-discriminatory reason for subjecting Plaintiff to a hostile work environment.

88.     Upon information and belief, Defendant failed to investigate Plaintiff's complaints of sex and pregnancy discrimination.

89.     Defendant failed to take appropriate corrective or preventative measures in connection with Plaintiff's complaints of sex and pregnancy discrimination.

90.     Rather than investigating, correcting, or taking measures to prevent the sex and pregnancy discrimination of which Plaintiff complained, Defendant retaliated against Plaintiff by further subjecting Plaintiff to a hostile work environment.

91.     The retaliatory actions taken against Plaintiff would have discouraged a reasonable employee from complaining about unlawful discrimination.

92.     The discriminatory and retaliatory hostile work environment to which Plaintiff was subjected by Defendant constituted a continuing violation.

93.     The acts comprising the persistent, ongoing patterns of sex and pregnancy discrimination and retaliation were related, and collectively constituted a cohesive sex- and/or

pregnancy-based hostile work environment which continued throughout Plaintiff's employment, culminating in her termination.

94.     As a direct and proximate result of Defendant's discriminatory and retaliatory conduct, Plaintiff has incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

95.     Defendant acted with malice and/or reckless indifference to Plaintiff's protected rights.

96.     The conduct of Defendant, as set forth above, was outrageous and warrants the imposition of punitive damages against Defendant.

## <u>COUNT I – TITLE VII</u>

97.     Plaintiff incorporates by reference the foregoing paragraphs as if set forth herein in their entirety.

98.     By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant has violated Title VII.

99.     Defendant acted intentionally and willfully, with malice and/or reckless indifference to Plaintiff's federally protected rights, and with knowledge that its actions violated the law and/or with knowledge that its actions may violate the law, warranting the imposition of punitive damages.

100.    As a direct and proximate result of Defendant's violations of Title VII, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

101.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until

this Court grants the relief requested herein.

102.   No previous application has been made for the relief requested herein.

## COUNT II – PHRA

103.   Plaintiff incorporates by reference the foregoing paragraphs as if set forth herein in their entirety.

104.   By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant has violated the PHRA.

105.   As a direct and proximate result of Defendant's violations of the PHRA, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

106.   Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

107.   No previous application has been made for the relief requested herein.

## COUNT III – PFPO

108.   Plaintiff incorporates by reference the foregoing paragraphs as if set forth herein in their entirety.

109.   By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant has violated the PFPO.

110.   Defendant acted intentionally and willfully, with malice and/or reckless indifference to Plaintiff's protected rights, and with knowledge that its actions violated the law and/or with knowledge that its actions may violate the law, warranting the imposition of punitive damages.

111.   As a direct and proximate result of Defendant's violations of the PFPO, Plaintiff

has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

112.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

113.    No previous application has been made for the relief requested herein.

**<u>RELIEF</u>**

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendant's unlawful conduct, and specifically prays that this Court grant the following relief to Plaintiff by:

(a) declaring the acts and practices complained of herein to be in violation of Title VII;

(b) declaring the acts and practices complained of herein to be in violation of the PHRA;

(c) declaring the acts and practices complained of herein to be in violation of the PFPO;

(d) enjoining and permanently restraining the violations alleged herein;

(e) entering judgment against Defendant and in favor of Plaintiff in an amount to be determined;

(f) awarding compensatory damages to make Plaintiff whole for all lost earnings, earning capacity and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendant's unlawful conduct;

(g) awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendant's unlawful conduct;

(h) awarding punitive damages to Plaintiff under Title VII and the PFPO;

(i) awarding Plaintiff such other damages as are appropriate under Title VII, the PHRA, and

the PFPO;

(j)  awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable

attorneys' fees; and

(k)  granting such other and further relief as this Court may deem just, proper, or equitable

including other equitable and injunctive relief providing restitution for past violations and

preventing future violations.


**CONSOLE MATTIACCI LAW LLC**


Dated:        November 6, 2020                         By:   /s/ *Kevin Console*
                                                                     Kevin Console, Esquire
                                                                     1525 Locust St., Ninth Floor
                                                                     Philadelphia, PA 19102
                                                                     (215) 545-7676

                                                                     *Attorney for Plaintiff,*
                                                                     *Lindsay Lake*

# EXHIBIT 1

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

## COMPLAINT

COMPLAINANT:

**LINDSAY LAKE**                                      Docket No.

v.

RESPONDENT:

**STRYKER SALES CORPORATION**

1.  The Complainant herein is:

    Name:        Lindsay Lake

    Address:     REDACTED
                 Media, PA 19063

2.  The Respondent herein is:

    Names:       Stryker Sales Corporation

    Address:     3800 East Centre Avenue
                 Portage, MI 49002

3.  I, Lindsay Lake, the Complainant herein, allege that I was subjected to unlawful

discrimination because of my sex (female) and pregnancy, and unlawful retaliation because of

my complaints of unlawful sex discrimination, as set forth below.

### Discrimination and Retaliation

**A. I specifically allege:**

[1]       I began working at Respondent's predecessor on or about March 17, 2014.

[2]       I worked out of my home office in Pennsylvania.

[3]       I last held the position of Sales Representative.

[4]       I consistently performed my job duties in a highly competent manner.

[5]       I last reported to Casey Davidson (male), Regional Manager.  Davidson reported to Eric Cunningham (male), Area Vice President.

[6]       Before I reported to Davidson, I reported to Nathan Lynch (male), Regional Director of Sales, beginning in or about August 2014.  Lynch reported to Cunningham.

[7]       I was one (1) of two (2) female Sales Representative employees out of seven (7) Sales Representative employees reporting to Lynch.

[8]       In or about September 2015, I informed Lynch, my supervisor at the time, that I was pregnant and expecting my fourth child.  I stated that my due date was February 20, 2016.  Lynch responded that I must attend the National Sales Meeting in early February 2016.

[9]       In or about December 2015, I provided a doctor's note to Merrie Hollister (female), Human Resources, stating that I was unable to attend the National Sales Meeting because I was pregnant and due with my baby around that time.

[10]       I was frequently asked by Lynch and other male superiors and coworkers if I would be returning to work after my maternity leave, and whether I thought it was time to stay at home and raise a family.

[11]       On February 26, 2016, I gave birth and went out of work on maternity leave.

[12]     From February 26, 2016 through approximately April 24, 2016, I was out of work on maternity leave.

[13]     On or about April 25, 2016, I returned to work from maternity leave.

[14]     While I was out of work on maternity leave, certain of my territory and significant accounts were taken away from me and given to David Marshall (male), Sales Representative, who Respondent had recently hired.

[15]     I received no explanation as to why certain of my territory and significant accounts were taken away from me and given to the male employee.

[16]     Certain of my territory and significant accounts were taken away from me because of my sex and pregnancy.

[17]     Having certain of my territory and significant accounts taken away from me negatively impacted my sales numbers.

[18]     In a meeting with Lynch, after I returned to work from maternity leave, he asked me what I had been doing for the past twelve (12) weeks, if I was sure I wanted to come back to work, and how I could possibly leave my children. Lynch criticized me for not doing enough while I was out on maternity leave.

[19]     Lynch stated that he and Cunningham were "shocked" that I had returned from maternity leave, as they "never believed [I] would come back" to work.

[20]     I was told by Lynch that I had to show that I was "back in the saddle," now that I had returned from maternity leave.

[21]     Lynch stated that he could not believe that I had left my newborn at home, and that his wife would never do that.

[22]     Lynch asked me, in a mocking tone, how many times I had to call home to check in on the baby.

[23]     Lynch denied me breaks to pump breast milk.  On field ride-along with Lynch, I was given no breaks to use my breast pump.  As a result, I was physically uncomfortable and in severe pain, which occasionally led to mastitis, a breast infection.

[24]     Lynch and other male superiors and coworkers discussed, in front of me, that having a C-section was better than a natural birth because then the woman's vagina was not "stretched out."

[25]     Lynch frequently stated that I should not work, and that I should instead be at home, raising a family as a stay-at-home mother.

[26]     Lynch often questioned my ability to both work at Respondent and be mother.

[27]     Lynch frequently made comments referencing my being a mother, and compared me to his stay-at-home wife and the wives of his friends and acquaintances.

[28]     Lynch often asked me how I could possibly work full time with four (4) children.

[29]     I never heard Lynch ask these questions of or make similar comments to male employees.

[30]     Lynch placed me in uncomfortable situations, and stated that he wanted to "see how tough" I was.

[31]     Lynch and other male superiors and coworkers regularly discussed going to strip clubs.

[32]    Lynch stated on numerous occasions that he was proud that he had never hired a female employee.

[33]    In or about March 2017, Lynch called me and told me that he "did it," he "hired a female," he "popped [his] cherry."

[34]    Lynch indicated to me that I had to work harder, prove myself, and go the extra mile because I was female.

[35]    I worked hard, obtained significant sales, and was on track to meet my sales numbers.

[36]    On or about July 14, 2017, I informed Lynch, my supervisor at the time, that I was pregnant and expecting my fifth child. I stated that I was due on February 6, 2018.

[37]    On or about July 18, 2017, in a meeting with Lynch four (4) days after I had informed Lynch that I was pregnant, I was issued a Coaching Worksheet. The Coaching Worksheet stated that it was "notification of [my] below standard performance," and that, "[f]ailure to meet the goals and objectives of the above plan and follow-up reviews may result in further disciplinary action; up to and including termination." I was blindsided. My performance did not warrant a Coaching Worksheet. The Coaching Worksheet contained false statements and misrepresentations, and outlined goals that were unattainable in the timeframe provided. I had recently made two (2) significant sales and my sales numbers were on track. I had no indication that my job was in jeopardy before I informed Respondent that I was pregnant.

[38]    Respondent issued me on a Coaching Worksheet because of my sex and pregnancy.

[39]     On July 25, 2017, in an email to Nikki Schnittker (female), Director, Human Resources Integration, I rebutted many of the false statements and misrepresentations contained in the Coaching Worksheet I was issued.

[40]     On July 29, 2017, in an email to Schnittker, I complained of sex and pregnancy discrimination.  I complained that, "[o]ver the past three years, since Nathan Lynch became my manager, he frequently suggested that because of my status as a female caregiver and a pregnant woman that I should not work and be home raising my family."  I provided examples of Lynch's sex and pregnancy discriminatory comments and conduct.

[41]     I was told that an investigation would commence, and that Respondent would look into my sex and pregnancy discrimination complaints.

[42]     In or about mid-August 2017, in a phone call with Schnittker, she told me that Respondent found no wrongdoing.

[43]     I continued to report to Lynch, and he continued to criticize my performance and hold me to a more stringent standard, until he resigned in November 2017.

[44]     Respondent treated me differently and worse, and in a more hostile and dismissive manner, than male and/or non-pregnant (or recently pregnant) female and/or noncomplaining employees were treated.

[45]     One of the significant products I was selling got recalled, which impacted my sales numbers.

[46]     In or about December 2017, I began reporting to Cunningham.

[47]     Male superiors and coworkers regularly made comments of a sexual and sexist nature.

[48]     Male superiors and coworkers told me that they could not believe I had four (4)—and then, five (5)—kids and could not believe that I was a mother.

[49]     Male superiors and coworkers asked if I breastfed.

[50]     Male superiors and coworkers stated that they wished their wives looked like me.

[51]     Male superiors and coworkers stated that they wished their wives worked outside the home, like me.

[52]     I heard male superiors and coworkers discussing who they thought the "hottest" female employee was.

[53]     I was instructed to not stay out late with "the guys" at bars and clubs during work events because this was male bonding time.  As a result, I missed out on career advancement opportunities.

[54]     Male superiors and coworkers regularly commented about my status as a mother, such as stating they could not believe I had children, asking "how [I did] it with kids," and asking about my childcare arrangements.

[55]     From February 14, 2018 to May 10, 2018, I was out of work on maternity leave.

[56]     While I was out of work on maternity leave, I was assigned to report to Davidson, who contacted me several times while I was on maternity leave.

[57]     On May 10, 2018, I returned to work from maternity leave.

[58]     On or about May 15, 2018, I was called into a meeting with Cunningham and Davidson.  From the tone of the conversation, it seemed to me that they were disappointed that I had returned to work from maternity leave.  Cunningham stated that he knew I had a

"horrible relationship" with Lynch, and hoped I could "work better" with Davidson. I was told that I had six (6) months to hit my sales numbers.

[59]     In or about late May 2018, I contacted Shanna Shattuck (female), Human Resources, regarding protocol for a field ride-along with a supervisor and using a breast pump. I was told that I should be given breaks every few hours, as needed, but that I should discuss it with my male manager.

[60]     In or about June 2018, when it was time for a field ride-along with Davidson, I was given no breaks to use my breast pump. By the end of the day, my shirt was completely soaked with breast milk and I was in severe physical pain. I knew that I would not fit in with "the guys" if I were to pump breast milk during work hours.

[61]     In or about September 2018, my sales territory was split and I had no input in which half of my territory I could retain. Male and/or noncomplaining employees had a choice in which territory they would retain when their territories were split.

[62]     I worked hard, achieved my goals, and was on track to meet my sales numbers.

[63]     On December 24, 2018, I submitted my performance review self-assessment, and gave myself an overall positive performance evaluation.

[64]     On January 29, 2019, in a meeting with Davidson, I received an overall negative performance evaluation. I was given an unsatisfactory overall rating. I was blindsided. My performance did not warrant an unsatisfactory rating. In the ranking of Sales Representatives, I was approximately number thirty-five (35) out of one hundred (100) Sales Representative employees, with number one (1) being the highest ranked. More than half of the Sales Representative employees were lower ranked than I was.

[65]     I was given an unsatisfactory overall rating because of my sex, pregnancy, and/or sex and pregnancy discrimination complaints.

[66]     Male and/or not-recently-pregnant and/or noncomplaining employees who did not meet their sales numbers were given a consistently effective, and not an unsatisfactory, overall rating.

[67]     Between February 4 and 7, 2019, I attended the National Sales Meeting. I was ignored, excluded, and not asked to present at the meeting. All of Davidson's other direct reports who were not in training—all of whom are male and/or not recently pregnant and/or noncomplaining—were asked to present. At dinner, after everyone was seated, Davidson instructed me to change seats so that I was farther away from him. I was moved to a less desirable spot at the table. Other employees noticed that I was being excluded and ostracized, and commented on it. When I approached Cunningham, to greet him, he said "hi," had a brief conversation with me, and then walked away from me.

[68]     On March 28, 2019, in a meeting with Cunningham and Davidson, with Julie Anderson (female), Director, Human Resources, on speakerphone, I was terminated, effective March 29, 2019. The stated reason was that I was not meeting expectations.

[69]     Respondent's stated reason for my termination is pretext.

[70]     Respondent terminated my employment because of my sex, pregnancy, and/or sex and pregnancy discrimination complaints.

[71]     Respondent subjected me to a hostile work environment because of my sex, pregnancy, and/or sex and pregnancy discrimination complaints.

[72]     Respondent's sex and pregnancy discrimination and retaliation constitutes a continuing violation from my date of hire through my effective termination date.

[73]     Respondent did not take any action to remedy or prevent the sex and pregnancy discrimination and retaliation to which I was subjected.

[74]     Respondent's sex and pregnancy discriminatory and retaliatory conduct toward me has caused me emotional distress.

[75]     Respondent's comments and conduct evidence a bias against female and/or pregnant employees and/or employees who engage in protected activity.

[76]     Respondent has an underrepresentation of female employees in high level positions.  For example, only three (3) out of the ten (10) employees on Respondent's Leadership Team are female; and only two (2) out of the nine (9) individuals on Respondent's Board of Directors are female.

[77]     **I bring this Complaint as a class and pattern and practice Complaint on behalf of myself and any and all current or former employees of Respondent who are female, and have been discriminated against based on sex, in connection with the terms and conditions of their employment, including being subjected to a hostile work environment, failure to promote, compensation, and/or termination**.

**B.** Based on the aforementioned, I allege that Respondent has discriminated against me because of my sex (female) and pregnancy, and retaliated against me for complaining of sex discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA"), and the Philadelphia Fair Practices Ordinance, Phila. Code § 9-1101, *et seq.* ("PFPO").

4.     The allegations in Paragraph 3 hereof constitute unlawful discriminatory and retaliatory practices in violation of:

__X__          **Pennsylvania Human Relations Act (Act of October 27, 1955, P.L.**

**744, as amended) Section 5 Subsection(s):** __(a); (d); (e)__

____          Section 5.1 Subsection(s) _____

____          Section 5.2 Subsection(s) _____

____          Pennsylvania Fair Educational Opportunities Act (Act of July 17, 1961,

P.L. 766, as amended) Section 4 Subsection(s) _____

5.    Other action based upon the aforesaid allegations has been instituted by the

Complainant in any court or before any other commission within the Commonwealth of

Pennsylvania as follows:

__X__          **This charge will be referred to the EEOC for the purpose of dual**

**filing.**

6.    The Complainant seeks that Respondent be required to:

(a) Make the Complainant whole.

(b) Eliminate all unlawful discriminatory and retaliatory practice(s) and procedure(s).

(c) Remedy the discriminatory and retaliatory effect of past practice(s) and

procedure(s).

(d) Take further affirmative action necessary and appropriate to remedy the violation

complained of herein.

(e) Provide such further relief as the Commission deems necessary and appropriate.

## VERIFICATION

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.A. Section 4904, relating to unsworn falsification to authorities.

5/17/19
(Date Signed)

(Signature)   Lindsay Lake
REDACTED
Media, PA 19063

# EXHIBIT 2

EEOC Form 161-B (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To: **Lindsay Lake**<br>REDACTED<br>**Media, PA 19063** | From: **Philadelphia District Office**<br>**801 Market Street**<br>**Suite 1300**<br>**Philadelphia, PA 19107** |

| ☐ | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR §1601.7(a))* |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **17F-2020-60562** | **Kurt Jung,**<br>**State, Local and Tribal Program Manager** | **(267) 589-9749** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

| [X] | More than 180 days have passed since the filing of this charge. |
|---|---|
| ☐ | Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge. |
| [X] | The EEOC is terminating its processing of this charge. |
| ☐ | The EEOC will continue to process this charge. |

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

| ☐ | The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u>** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost. |
|---|---|
| ☐ | The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time. |

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u>** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Jamie R. Williamson*                    8/12/2020

**Jamie R. Williamson,**                    *(Date Mailed)*
**District Director**

Enclosures(s)

cc:    **Kevin Console Esq.**
       **(Charging Party Attorney)**

       **Stryker Sales Corporation**
       **Human Rersources Manager**

cc:      *(Sent by e-mail only: kevinconsole@consolelaw.com )*

**Kevin Console Esq.**
**Console Mattiacci Law LLC**
**1525 Liocust Street, 9th floor**
**Philadelphia, PA 19102**
**kevinconsole@consolelaw.com**


**Human Rersources Manager**
**Stryker Sales Corporation**
**3800 East Centre Avenue**
**Portage, MI 49002**