```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LINDSAY LAKE                   :      CIVIL ACTION
                               :
          v.                   :
                               :
STRYKER SALES, LLC             :      NO. 20-5554
```

MEMORANDUM

Bartle, J.                                          March 1, 2022

Plaintiff Lindsay Lake brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. §§ 951 et seq., and the Philadelphia Fair Practices Ordinance ("PFPO"), Phila. Code §§ 9-1100 et seq., against her former employer, defendant Stryker Sales, LLC. Specifically, plaintiff claims that defendant discriminated against her based on her sex and pregnancies by terminating her employment, subjecting her to a hostile work environment, and retaliating against her for complaining about discriminatory conduct. Before the court is the motion of defendant for summary judgment.

I

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A dispute is genuine if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986).  We view the facts and draw all inferences in favor of the nonmoving party.  See In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004).

Summary judgment is granted when there is insufficient record evidence for a reasonable factfinder to find for the nonmovant.  See Anderson, 477 U.S. at 252.  "The mere existence of a scintilla of evidence in support of the [nonmoving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]."  Id.  In addition, Rule 56(e)(2) provides "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for the purposes of the motion."  Fed. R. Civ. P. 56(e)(2).

II

Defendant seeks summary judgment on all of plaintiff's claims because it alleges that she cannot establish a prima facie case of discrimination and that it had a legitimate business reason to terminate her based on poor sales

2

performance.  Defendant also seeks summary judgment as to plaintiff's hostile work environment claim because her claim is barred by the statute of limitations, her allegations fall short of demonstrating a severe and pervasive work environment, and defendant had anti-discrimination policies in place of which plaintiff failed to avail herself.  Finally, defendant avers that plaintiff cannot make out a prima facie claim for retaliation because there is no temporal proximity between her complaint on July 29, 2017 to human resources and her termination on March 28, 2019.

III

Title VII prohibits discrimination that is so severe or pervasive as to create a hostile working environment.  Mandel v. M&Q Packaging Corp., 706 F.3d 157, 167 (3d Cir. 2013).  To succeed on a claim for hostile work environment, a plaintiff must establish the following:

> 1) the employee suffered intentional discrimination because of his/her sex, 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of respondeat superior liability.

Id.  In considering whether an environment is severe or pervasive, "a court must consider the totality of the circumstances, including 'the frequency of the discriminatory

conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Id. at 168 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)).  The court will evaluate the facts in favor of plaintiff as the nonmoving party to determine if there is sufficient evidence for a reasonable factfinder to find for plaintiff on her claim for a hostile work environment. See e.g., In re Flat Glass, 385 F.3d at 357.

Plaintiff was hired as an Outside Sales Representative in 2014.[1]  That same year, she began reporting to her direct supervisor, Nathan Lynch.  He reported to her secondary supervisor, Eric Cunningham, the area vice president.

Plaintiff cites to numerous comments made by Lynch in support of her hostile work environment claim.  Lynch told her: (1) in front of co-workers that having a Caesarean section delivery was better than a natural birth delivery because the woman's vagina was not "stretched out"; (2) he did not expect that she would return to work after her maternity leave; (3) to know her place and that after-work events were for the male employees only; (4) she should stay home to care for her kids; (5) he "did it" and "popped his cherry" when he hired his first

---

1.  Plaintiff was hired by Sage Products, LLC, which defendant acquired in 2016 when it became plaintiff's employer.

4

female employee; (6) it was unacceptable for her to miss a national sales conference even though it was only a few weeks from her due date; and (7) he did not think she could work and rase a family. He also discussed with other male coworkers in front of her their trips to strip clubs to which female employees were not invited and asked plaintiff about her breastfeeding and denied her breaks to breastfeed. In addition, he changed her accounts while she was on maternity leave and assigned them to a less-experienced male employee.

Most of these comments were made over the course of 2015 through 2017. Lynch left the company in November 2017 to work elsewhere. Cunningham then became her supervisor. When plaintiff returned from maternity leave in May 2018 she was assigned a new supervisor, Casey Davidson, who reported to Cunningham. Plaintiff avers that Davidson, Cunningham, and Lynch are still friends and that Davidson admitted he was still in contact with Lynch.

Plaintiff claims that Davidson also engaged in a hostile work environment by perpetuating the "boy's club" that existed at the company. She avers that this "boy's club" is evidenced by Lynch's previous comments. In support of this claim, plaintiff recounts that on a ride-along with Davidson in the sales field in June 2018, she was not given any breaks to use her breast pump and was in severe physical pain by the end

5

of the day.  She also states that her sales territory was split in September 2018 without any input from her.  In addition, she received an unsatisfactory overall rating on her performance self-assessment at the end of 2018.

Plaintiff also testified that Davidson treated her worse than other employees in that he did not ask her to present at a national sales conference in February 2019, he asked her to change seats and sit farther away from him, and he and Cunningham excluded and ignored her at the conference.

On March 28, 2019, plaintiff was terminated in a meeting with Cunningham, Davidson, and the director of human resources, Julie Anderson.  Plaintiff filed a complaint with the Pennsylvania Human Rights Commission ("PHRC") on May 20, 2019 and cross-filed it with the Equal Employment Opportunity Commission ("EEOC").

Defendant argues that plaintiff's claim of a hostile work environment is barred by the statute of limitations and that the aspects of the claim that are within the statutory period are not severe or pervasive.

Title VII provides that a charge regarding an unlawful employment practice "shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred."  42 U.S.C. § 2000e-5(e)(1).  Since plaintiff filed the complaint with the

PHRC on May 20, 2019, the alleged unlawful employment practice must have occurred within 300 days of the date of filing, that is on July 24, 2018 or thereafter.

The Supreme Court has held that "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile work environment takes place within the statutory time period." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 105 (2002). Unlike discrete acts such as termination or failure to promote, hostile work environment claims "are based on the cumulative effect of individual acts" which "collectively constitute one 'unlawful employment practice.'" Id. at 115, 117 (quoting 42 U.S.C. § 2000e-5(e)(1)). As long as "an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." Id. at 117.

While plaintiff's allegations about Lynch's comments are, if true, undoubtedly objectionable and provide ample support for a hostile work environment claim, they occurred outside of the statutory time period, that is prior to July 24, 2018. Plaintiff has failed to show "an act contributing to the claim" that falls within the statutory time period that would

7

permit the factfinder to look to the behavior alleged outside of the time period to assess liability for a hostile work environment.

The only comments or incidents plaintiff cites to that occurred on or after July 24, 2018 are from Davidson, not Lynch, and are wholly different in nature. She points to the fact that her sales territory was re-assigned in September 2018 and that her performance rating was unsatisfactory. She also states that Davidson did not have her present at a sales conference in 2019 and asked her to sit farther from him at that conference. These are markedly different events than the comments attributed to Lynch from 2017 and earlier in which he made derogatory comments directed at plaintiff regarding her pregnancy and about women.

Our Court of Appeals has determined that a continuing violation exists when at least one act, such as a manager calling a plaintiff-employee a slur, fell within the statute of limitations and permitted a hostile work environment claim because "many of the acts that occurred prior to the applicable limitations period involved similar conduct by the same individuals, suggesting a persistent, ongoing pattern." Mandel, 706 F.3d at 167. That is not the case here.

Plaintiff includes no allegations that Davidson, whether within the statutory period or prior, made derogatory comments to her, much less ones of the nature that Lynch made.

8

Without anything further, there is nothing in the record to suggest that Davidson's actions towards plaintiff at the sales conference in 2019 were part of a larger pattern to subject her to a hostile work environment. It was not similar conduct, and it was not done by the same individual as the claims of a hostile work environment prior to July 2018.

No reasonable jury could find sufficient evidence of "an act contributing to the claim" that occurred within the 300-day period to permit a continuing violation for a hostile work environment claim. As for the alleged actions that remain within the statutory time period, they are not "severe or pervasive" such that a reasonable jury could find for plaintiff on a hostile work environment claim under Title VII. See Mandel, 706 F.3d at 168.

Summary judgment will therefore be granted in favor of defendant as to plaintiff's hostile work environment claim.

IV

Defendant also seeks summary judgment on plaintiff's claim for retaliation, that is for her termination on March 28, 2019. After she was terminated, plaintiff filed a complaint with the PHRC on May 20, 2019. That filing was clearly within 300 days of the alleged unlawful practice that was her termination. See 42 U.S.C. § 2000e-5(e)(1).

In establishing a prima facie case of retaliation under Title VII, a plaintiff must point to evidence that "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." Moore v. City of Phila., 461 F.3d 331, 340-41 (3d Cir. 2006).

If plaintiff establishes a prima facie case, the burden shifts to the employer to advance a "legitimate, non-retaliatory reason" which the plaintiff would then have to prove was mere pretext. Id. at 342. Therefore "[t]o survive a motion for summary judgment in the employer's favor, a plaintiff must produce some evidence from which a jury could reasonably reach these conclusions." Id.

Defendant does not dispute that plaintiff engaged in a protected activity when she made a complaint to human resources in July 2017 or that there was an adverse employment action taken against plaintiff when defendant terminated her employment in March 2019. Defendant instead seeks summary judgment based on a lack of causation between these two events.

Our Court of Appeals has explained that courts "consider 'a broad array of evidence' in determining whether a sufficient causal link exists to survive a motion for summary judgment." LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503

10

F.3d 217, 232 (3d Cir. 2007).  In circumstances where the temporal proximity between the protected activity and retaliatory act is not "unusually suggestive," the court asks "whether 'the proffered evidence, looked at as a whole, may suffice to raise the inference.'"  Id.  Examples of proffered evidence include "intervening antagonism or retaliatory animus, inconsistencies in the employer's articulated reasons for terminating the employee, or any other evidence in the record sufficient to support the inference of retaliatory animus." Id. at 232-33.

Causation is very fact-based.  Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 (3d Cir. 2000).  Our Court of Appeals has found that the "caselaw has set forth no limits" on what courts may consider to find sufficient proof of causation. Id. at 281.

The time between plaintiff's complaint regarding Lynch's behavior in July 2017 and her termination in March 2019 is nineteen months.  As this hiatus is not sufficiently proximate to infer retaliation, the court must look to all of the evidence plaintiff has proffered to determine if it is sufficient evidence, if believed, to support a finding of causation between the two events.  See LeBoon, 503 F.3d at 232.

As support for causation, plaintiff avers that she was not given any reason for her termination when she was fired and

11

that her sales performance was not discussed at this meeting. She also cites to evidence that she was one of the higher-performing employees in her region based on company rankings to argue that she was not a poorly performing employee as defendant argues. Plaintiff offers these reasons as evidence of an inconsistency in the employer's reason for termination.

She also proffers a pattern of antagonism continuing from Lynch who, in consultation with Cunningham, gave her an "off-cycle blue sheet," the equivalent of a final written warning, in 2017 when she notified him of her pregnancy, through Davidson and Cunningham, her supervisors and Lynch's friends, who fired her in 2019. Defendant has cited this blue sheet as a legitimate business reason for terminating her. Plaintiff also avers that Davidson ostracized her by leaving her off calls and making her feel like an outcast at the 2019 national sales conference. She further claims that Cunningham was one of the male coworkers with whom Lynch would talk about going to strip clubs in her presence.

Both Cunningham and Davidson knew of plaintiff's complaint regarding Lynch's conduct. Whether her termination was in retaliation for filing this complaint goes to their intent for terminating her. This is a fact-intensive inquiry, and plaintiff has proffered sufficient evidence in the record of

12

this intent that a reasonable factfinder could find evidence of retaliation.

This court is also mindful that our Court of Appeals has instructed that "[s]ummary judgment is to be used sparingly in employment discrimination cases" and that "the plaintiff's burden at this first stage is not particularly onerous." Doe v. C.A.R.S. Protection Plus, Inc., 527 F.3d 358, 369 (3d Cir. 2008). This is particularly true when "intent is at issue," as is the case here. See Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 321 (3d Cir. 2000). The question therefore will be left to the jury as factfinder.

The motion of defendant for summary judgment on plaintiff's claim of retaliation will therefore be denied.

V

With respect to plaintiff's remaining claims for pregnancy and sex discrimination under Title VII, the PHRA, and the PFPO, there exist genuine disputes of material fact. Accordingly, the motion of defendant for summary judgment will otherwise be denied.